Filed 1/7/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>EDDIE ARTURO BRAVO,<br><br>    Defendant and Appellant. | A168580<br><br>(Contra Costa County<br>Super. Ct. No. 05000705947) |

In 2008, defendant Eddie Arturo Bravo reached a plea agreement, pleading no contest to rape, pandering with a minor, soliciting a minor to sell a controlled substance, and multiple sex offenses involving a minor in exchange for an aggregate determinate 20-year prison sentence. The original judgment included an enhancement for a prison prior, but the punishment for the enhancement was stayed.

Many years later, the Legislature eliminated sentencing enhancements for prison priors such as Bravo's, and in 2023, Bravo sought recall of his sentence and full resentencing pursuant to Penal Code section 1172.75. The trial court resentenced Bravo, striking the prison prior enhancement (and other enhancements), but his new sentence still results in an aggregate term of 20 years in prison.

On appeal, Bravo contends the trial court made various sentencing errors. As a preliminary matter, the Attorney General contends Bravo is not eligible for relief under Penal Code section 1172.75 because the punishment

1

for the prison prior enhancement that triggered his resentencing under the statute was originally stayed, and Bravo should never have been resentenced. We conclude the fact that the enhancement was originally stayed does not preclude resentencing under section 1172.75, and we find no reversible error in the resentencing.

Accordingly, we affirm.

## BACKGROUND

*Bravo's Criminal Convictions and Original Sentence*

In 2006, when Bravo was 29 years old, he had sexual contact with a 15-year-old girl, Jane Doe, on multiple occasions over the course of four months.[1] According to the Contra Costa District Attorney, Bravo exposed Doe to drugs and had sex with her in San Francisco in June 2006 and exposed her to alcohol and had sex with her at a hotel in Concord in September 2006. In July 2006, Bravo had sex and engaged in other sex acts with Doe two or three different times in Concord. On another occasion, Bravo took Doe to San Francisco and asked her whether she would prostitute herself for him and called himself a " 'pimp.' " He also asked her to sell drugs in the area where she lived. Doe became pregnant, and she had an abortion.

Pursuant to a negotiated disposition reached in 2008, Bravo pleaded no contest to 12 felonies: three counts of unlawful sexual intercourse by a person 21 years of age or older with a minor under 16 years old (Pen. Code,[2] § 261.5, subd. (d); counts 1, 4, and 6); three counts of lewd acts upon a child aged 14 to

---

[1] Our summary of Bravo's criminal conduct is based on the parties' descriptions, which they provided in briefing filed with the trial court in the current matter. In reciting the facts of the underlying offenses in his opening appellate brief, Bravo cites this briefing.

[2] Undesignated statutory references are to the Penal Code.

2

15 by a person at least 10 years older than the child (§ 288, subd. (c)(1); counts 2, 3, and 5); oral copulation of a minor under age 16 (former § 288a, subd. (b)(2) (currently § 287, subd. (b)(2)); count 7); two counts of sexual penetration of a person under age 16 by a person over 21 years of age (§ 289, subd. (i); count 8 & 9); pandering with a minor under age 16 (§ 266i, subd. (b); count 10); rape by use of drugs (§ 261, subd. (a)(3); count 11); and soliciting a minor to use/sell a controlled substance (Health & Saf. Code, § 11353; count 12).  Bravo also admitted that he inflicted great bodily injury in the commission of counts 1, 4, 6, and 11 (§ 12022.7) and that he had served a prior prison term (§ 667.5, subd. (b) (section 667.5(b)) for four counts of robbery (§ 211).

As part of the negotiated disposition, Bravo agreed to a 20-year prison sentence.  The trial court imposed the agreed-upon sentence, composed of an upper term of nine years for count 12 (soliciting a minor to use/sell a controlled substance), a full, separate, consecutive upper term of eight years for count 11 (rape by use of drugs),[3] and a consecutive three-year term for one enhancement for great bodily injury under section 12022.7.  The court also sentenced Bravo to concurrent middle terms for the remaining counts (three three-year terms for counts 1, 4, and 6; six two-year terms for counts 2, 3, 5, 7, 8, and 9; and a six-year term for count 10) and stayed the remaining three enhancements for great bodily injury and the single enhancement for the prison prior pursuant to section 667.5(b).

Bravo was paroled in October 2022.

---

[3] Pursuant to section 667.6, subdivision (c), "a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion," and rape in violation of section 261, subdivision (a)(3) (count 11), is an offense specified in subdivision (e) of the statute.

*Elimination of the One-Year Enhancement for Most Prison Priors and Retroactive Relief Under Senate Bill No. 483*

Effective January 1, 2020, section 667.5(b) was amended to eliminate the one-year enhancement for prior prison terms except in cases where the defendant had served the prior prison term for a qualifying sexually violent offense. (Stats. 2019, ch. 590, § 1; *People v. Coddington* (2023) 96 Cal.App.5th 562, 567.)

In 2021, the Legislature created a mechanism for providing retroactive relief to persons serving a term for a judgment that includes an enhancement under section 667.5(b) that has since been eliminated. (§ 1172.75, subds. (a–c); *People v. Burgess* (2022) 86 Cal.App.5th 375, 380.) Specifically, "Senate Bill No. 483 added section 1171.1 to the Penal Code, which was subsequently renumbered without substantive change as section 1172.75. (Stats. 2022, ch. 58, § 12, eff. June 30, 2022.) Section 1172.75, subdivision (a) provides that '[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid.[*] Once the California Department of Corrections and Rehabilitation identifies those persons 'currently serving a term for a judgment that includes an enhancement described in subdivision (a)' to the sentencing court, 'the court shall recall the sentence and resentence the defendant.' (§ 1172.75, subds. (b) & (c).)" (*People v. Monroe* (2022) 85 Cal.App.5th 393, 399.)

Section 1172.75, subdivision (d) (section 1172.75(d)), governs resentencing under the statute and provides in relevant part: "(1) Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that

4

imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed.

"(2) The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.

"(3) The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.

"(4) Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

*Bravo's Request for Resentencing Under Section 1172.75*

On July 21, 2023, Bravo filed a motion for recall of his sentence and full resentencing pursuant to section 1172.75. He argued he should be resentenced to a lower sentence because he was not a risk to public safety and he had rehabilitated and reentered society. Bravo proposed a new sentence of nine years composed of a low term of three years for count 11 (rape by use of drugs), a full, consecutive low term of three years for count 12

5

(soliciting a minor to use/sell a controlled substance), and three years for one enhancement for great bodily injury. He asked for low terms because "prior trauma played a role in [his] commission of the offense," citing section 1170, subdivision (b)(6)(A), and urged the court to dismiss all but one of the enhancements for great bodily injury because multiple enhancements were alleged in a single case, citing section 1385, subdivision (c)(2).[4] He asked the court to impose concurrent low terms for counts 1 through 10, resulting in no additional prison time for the 10 remaining crimes of conviction.

The district attorney filed a response, agreeing that the section 667.5(b) enhancement had to be stricken but urging the court to leave the sentence otherwise unchanged.[5]

---

[4] In support of his claim of prior victimization or childhood trauma, Bravo reported the following. His parents were immigrants, and his mother fled El Salvador in the 1960's. He was raised by his mother, who had several other children, and there was never enough money for food or stable housing. Bravo was physically abused and neglected by his mother. He grew up in "neighborhoods filled with criminal activity," "surrounded by physical violence, gun violence, assaultive behavior, and property crimes," and he engaged in criminal behavior from age five, stealing from neighborhood stores. When he was nine years old, his 17-year-old brother died by suicide and his mother blamed Bravo for his brother's death. He was arrested in his home when he was 10 years old, and "scarred from the arrest incident . . . and from acts of police brutality he had witnessed," Bravo "developed an intense distrust with authority figures." He was sent to group homes as a teenager.

[5] The prosecution reported that Bravo was paroled after serving approximately 16 years of his sentence in prison, and since release, he had suffered a misdemeanor conviction for failure to register as sex offender on May 12, 2023. The prosecution argued this violation while on parole "indicates that [Bravo] is not well-suited to be off of parole," which could be the result if he were to be resentenced to a shorter sentence such as the nine years he requested. The prosecution further argued that mitigating factors did not apply in this case because Bravo's sexual relationship with the 15-

6

A hearing on resentencing under section 1172.75 was held on August 1, 2023. At the start of the hearing, the trial court stated that the one-year enhancement under section 667.5(b) would be stricken, but this would not result in a shorter sentence since that enhancement was stayed in the original sentence. The court agreed with Bravo that he was entitled to "full resentencing," recognizing it could "impose a different [i.e., lower] sentence, even where there was a plea involved." The court also noted it could "[re]impose the upper term despite the lack of the now required findings pursuant to [section] 1170 . . . because of the language in [section] 1172.75(d)(4)."

The court stated it understood the remaining issues on resentencing to be, first, whether upper terms should be imposed for counts 11 and 12 and, second, whether an enhancement for great bodily injury should be imposed. The court asked counsel, "Am I leaving anything out?" and defense counsel responded, "I don't think you are, Your Honor." The prosecutor agreed, "Those are the issues."

The prosecutor argued there were "various sound reasons for maintaining the upper terms for Counts 11 and 12," including that the victim was particularly vulnerable, Bravo "induced a minor to commit crimes," "[h]e was convicted of other crimes for which consecutive sentences could have been imposed but were not," his criminal history showed his "convictions were of an increasing seriousness," he "was on probation during the time of at least some of the offenses," and "the repeated nature of the crime[s]."[6]

_____

year-old victim was not connected to his prior victimization or childhood trauma.

[6] The prosecutor also cited as an aggravating factor the fact that "Bravo's acts caused great bodily injury in impregnating a minor." Defense counsel responded that there was already a great bodily injury enhancement,

7

The victim Jane Doe's mother spoke at the resentencing hearing. She said her then "15-year-old daughter was very vulnerable."[7]

Bravo spoke on his own behalf, reading a statement of remorse and a separate statement describing his rehabilitation. Bravo said he was beaten by his mother's boyfriends, and he became violent himself. He credited his wife and his faith for his change. Regarding his parole violation, Bravo said he was transient, and he "missed the [sex offender] registry after six months because . . . everything my wife is going through, health-wise, and me trying to be a provider from . . . where I'm at, being homeless."[8]

Bravo's wife also spoke on his behalf.[9]

_____

so that should not be considered an aggravating factor. To the point that Bravo received concurrent terms for other crimes (10 sex offenses), defense counsel stated, "this was a negotiated disposition, so I don't believe an aggravator should be taken into account that they could have been imposed consecutively because this was, again, an agreement between the district attorney and the defense." Regarding his criminal history, defense counsel told the court that Bravo "only has one prior felony; all the rest are misdemeanors."

[7] Doe's mother further reported that Doe was now 32 years old, she had never held a job, she "doesn't do well in public places," she takes medication for anxiety disorder, and she suffers from alcohol and substance abuse. Doe's mother told the court, "16 years later, I'm still dealing with this crime every single day."

[8] The appellate record does not include the terms of parole, but Bravo's attorney told the court that Bravo "could not be paroled into Contra Costa County because of the victim's presence there," and "over the period of nearly the last year, Mr. Bravo has been homeless." Apparently, Bravo's wife and family are in Contra Costa County.

[9] Bravo's wife had known him since they were teenagers, but they had lost contact. When she learned Bravo was in prison, they reconnected and started a relationship, and they married in 2016 while Bravo was still in prison. She said the relationship "was pretty rocky," but "I wouldn't be here today if he wasn't a changed man."

The trial court struck the one-year enhancement under section 667.5(b) and further exercised its discretion under section 1385 to strike three of the four enhancements for great bodily injury (which had also been stayed originally). The net effect of the resentencing was a sentence of 20 years, the length of Bravo's original sentence.

The court explained why it selected the upper terms for counts 11 and 12: "I do believe that there has been a showing—some showing of childhood trauma. However, I do believe it would be contrary to the interest of justice to impose the lower term here. [¶] So then, pursuant to [section] 1170(b)(6), I am not compelled to impose the lower term. Choosing between the middle term and the upper term, I believe that, at this point, it still remains appropriate to impose the upper term, given the factors articulated by the People, in particular, the vulnerability of the victim, the inducement to commit a crime, that the sentences could have been consecutive but were concurrent[10], which I hear Defendant's argument that this was a plea. But I note that that kind of goes both ways. It was negotiated to be concurrent . . ., and it was negotiated to be the upper term."

## DISCUSSION

A. *Resentencing Under Section 1172.75 is Available Where the Section 667.5(b) Enhancement Was Originally Imposed and Stayed*

Section 1172.75 requires state prison and county correctional administrators to "identify those persons in their custody currently serving a term for a *judgment that includes an enhancement* described in subdivision (a)" (i.e., an "enhancement *imposed* prior to January 1, 2020, pursuant to"

---

[10] That is, Bravo received concurrent terms for counts 1 through 10, although he could have received consecutive one-third middle terms for these offenses, which would have added nine years to his aggregate sentence.

9

section 667.5(b) that is no longer valid) and to provides the name of each such person "to the sentencing court that imposed the enhancement." (§ 1172.75, subd. (b), italics added.) The trial court "review[s] the judgment" of such an identified person, and if "the current judgment includes an enhancement described in subdivision (a), the court *shall recall the sentence and resentence the defendant*." (§ 1172.75, subd. (c), italics added.)

Here, Bravo's judgment "includes an enhancement" under section 667.5(b) that is now invalid. Nonetheless, the Attorney General now argues Bravo is not eligible for resentencing under section 1172.75 because his section 667.5(b) enhancement was originally stayed.[11] He relies on *People v. Rhodius* (2023) 97 Cal.App.5th 38, review granted February 21, 2024, S283169 (*Rhodius*), in which Division Two of the Fourth District Court of Appeal concluded section 1172.75 resentencing relief was intended to apply only if the now-invalid section 667.5 enhancement was imposed and *executed*, and a defendant is not entitled to resentencing if the enhancement was imposed but *stayed*. (*Id.* at pp. 46–49.) Every other appellate court that has considered this issue, however, has reached the opposite conclusion. (See *People v. Espino* (2024) 104 Cal.App.5th 188, 196, review granted, Oct. 23, 2024, S286987 (*Espino*) [citing cases from the Third, Fourth, Fifth, and Sixth District Courts of Appeal that reject the argument section 1172.75 is unavailable to a defendant whose invalid section 667.5(b) enhancement was imposed but stayed].) This issue will be decided by the California Supreme Court. (See *ibid.* [noting the Supreme Court granted review of *Rhodius* and decisions taking the opposite view].) In the meantime, we agree with the *Espino* court, which found "no good reason to reject the weight of authority"

___

[11] The district attorney did not make this argument in the trial court at resentencing.

10

that has rejected the argument that we should "imply an execution requirement into the word 'impose' " as the word is used in section 1172.75, subdivision (a). (*Espino*, at p. 196.)

In reaching its unique conclusion, the *Rhodius* court reasoned: "Section 1172.75 subdivision (d)(1)'s requirement that the resentencing shall result in a lesser sentence than the one originally imposed necessitates the conclusion that the repealed enhancement increased the length of the sentence. The only way for the repealed enhancement to have increased the length of a sentence is for the enhancement to have been imposed and executed. If the repealed enhancement was imposed and stayed, the sentence would not have been increased, as was the case here. To interpret 'imposed' as used in section 1172.75, subdivision (a), to include when a sentence was 'imposed and stayed' would require any sentencing court faced with an 'imposed and stayed' enhancement to arbitrarily lower a sentence simply because the judgment contained a stayed enhancement." (*Rhodius*, *supra*, 97 Cal.App.5th at p. 44.)

Multiple appellate courts have considered this rationale and rejected it. (*Espino*, *supra*, 104 Cal.App.5th at p. 196 [citing cases].) As the Fifth District Court of Appeal explained in disagreeing with *Rhodius*, "Imposed-but-stayed prior prison term enhancements carry the possibility of execution. . . . If 'imposed' in subdivision (a) of section 1172.75 is read to include stayed prior prison term enhancements, then striking them now as invalid eliminates their impact from the 'originally imposed' sentence referred to in section 1172.75, subdivision (d)(1) resulting in a 'lesser sentence than the one originally imposed.' " (*People v. Mayberry* (2024) 102 Cal.App.5th 665, 674–675, review granted, Aug. 14, 2024, S285853 (*Mayberry*); see *Espino*, *supra*, 104 Cal.App.5th at p. 197 [ elimination of a stayed prison prior reduces the

11

potential sentence and "therefore results in a lesser sentence than the one originally imposed"].)

For the reasons explained in *Espino*, *Mayberry*, and the cases cited therein, we reject the Attorney General's position that Bravo is ineligible for section 1172.75 relief because his now-invalid section 667.5(b) enhancement was imposed but stayed.

B.     *Bravo Received a Lesser Sentence on Resentencing*

Bravo contends the trial court's imposition of a 20-year sentence on resentencing violates section 1172.75(d)(1)'s mandate that "[r]esentencing pursuant to this section *shall result in a lesser sentence* than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (Italics added.) He argues section 1172.75(d)(1) means the court was required "to lessen [his] sentence *by reducing the number of years*, unless it found imposition of such would 'endanger public safety' by 'clear and convincing evidence.' " (Italics added.) In other words, Bravo believes that, in addition to striking the 667.5(b) enhancement, the trial court was required to reduce some other aspect of his sentence so that his resulting aggregate term was less than the original 20 years unless doing so would endanger public safety.

But Bravo offers no authority for his position that a "lesser sentence" as the phrase is used in section 1172.75 necessarily means a lower aggregate term when the now-invalid section 667.5(b) enhancement was originally stayed, and case law on this point is to the contrary. As we have described above, the *Espino* court explained, "[E]ven when punishment for an enhancement is stayed, the enhancement carries 'the potential for an increased sentence in certain circumstances, and removal of the stayed

12

enhancement does provide some relief to the defendant by eliminating that potential.' [Citation.] . . . Thus, . . . even when a prison prior is stayed and not executed, elimination of the prison prior reduces the potential sentence facing the defendant and therefore *results in a lesser sentence* than the one originally imposed." (*Espino, supra,* 104 Cal.App.5th at p. 197, italics added; see *Mayberry, supra,* 102 Cal.App.5th at pp. 674–675 [same]; *People v. Saldana* (2023) 97 Cal.App.5th 1270, 1278, review granted Mar. 12, 2024, S283547 [same]; *People v. Christianson* (2023) 97 Cal.App.5th 300, 312, review granted Feb. 21, 2024, S283189 [same].) Under the cases cited, eliminating a stayed enhancement results in a "lesser sentence" for purposes of section 1172.75 even though it does not result in a shorter sentence.

In this case, Bravo received a "lesser sentence" because the trial court struck the 667.5(b) enhancement.[12] As the trial court correctly observed, Bravo's new sentence was "a lesser sentence because there are fewer components to it," even though "it does not result in any on-the-ground change." Accordingly, we reject the premise of Bravo's first appellate claim that the trial court failed to impose a "lesser sentence" under section 1172.75(d)(1).

C.      *The Trial Court's Decision Not to Dismiss One of the Great Bodily Injury Enhancements Under Section 1385*

Next, Bravo argues the trial court "failed to apply the correct statutory analysis" (capitalization omitted) when it declined to exercise its discretion under section 1385, subdivision (c) (section 1385(c)), to strike the remaining great bodily injury enhancement. We discern no error.

---

[12] The court also struck three enhancements for great bodily injury, again resulting in a lesser sentence.

13

Under section 1385, a trial court may dismiss an enhancement "in furtherance of justice" on its own motion. (§ 1385, subds. (a) & (c); *People v. Dain* (2024) 99 Cal.App.5th 399, 409.) Section 1385(c), guides the court's discretion, providing in relevant part: "(1) Notwithstanding any other law, the court shall dismiss an enhancement *if it is in the furtherance of justice to do so*, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (Italics added.) Pertinent to this case, the list of mitigating circumstances includes subparagraph (E), "The current offense is connected to prior victimization or childhood trauma." (§ 1385(c)(2)(E).)

Section 1385(c) does not mean that, whenever a listed mitigating circumstance is present, the trial court must dismiss all enhancements unless it finds dismissal would endanger public safety. The California Supreme Court has explained that, even without "a finding that dismissal would endanger public safety," the trial "court retains the discretion to impose or dismiss enhancements provided that it assigns significant value" to the presence of any listed mitigating circumstances. (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.)

Bravo argues the trial court misapplied section 1385 because it "did not use the 'great weight' language or analysis." He claims, "the court failed to apply section 1385's analysis altogether, giving very little, if any, weight to [Bravo]'s trauma and victimization." This argument is unpersuasive.

First, no particular language was required for the trial court to decline to dismiss one of the four enhancements for great bodily injury. Section 1385, subdivision (a), requires a trial court to state its "reasons for the dismissal . . . orally on the record," but there is no similar statutory requirement when a court denies a request to dismiss an enhancement.

Second, "[a]bsent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 (*Ramirez*).) Bravo asserts the court "should have, but did not, assign significant value to" his childhood trauma. We see no basis for this assertion. Nothing in the record demonstrates the trial court failed to assign significant value to the evidence of his childhood trauma or otherwise misunderstood or misapplied section 1385(c). Bravo's claim of error, therefore, fails.

D.    *The Court's Decision Not to Impose Lower Terms Under Section 1170*

Bravo similarly claims the trial court erred by failing to apply section 1170, subdivision (b)(6)'s presumption in favor of lower terms. Again, we find no error.

Section 1170, subdivision (b)(6) (section 1170(b)(6)), "creates a presumption that the court should impose the low term 'if any of the following was a contributing factor in the commission of the offense: [¶] (A) The [defendant] has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. . . . This presumption may be overcome if the court 'finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice.' (*Ibid.*) . . . [T]he mere fact a defendant . . . has suffered past trauma is insufficient—[the mitigating circumstance] must be 'a contributing factor in

15

the commission of the offense' for the low term presumption to apply." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765 (*Knowles*).)

In this case, the trial court found "some showing of childhood trauma," but found "it would be contrary to the interest of justice to impose the lower term here." The court continued, "So then, pursuant to [section] 1170(b)(6), I am not compelled to impose the lower term." The court selected upper terms, relying on the aggravating factors identified by the prosecution.

Bravo argues the court "failed to apply the low term presumption in evaluating the interests of justice or weighing the aggravating circumstances." But the record shows the trial court expressly referred to section 1170(b)(6) and found imposing lower terms "would be contrary to the interest of justice." The court, thus, " 'affirmatively' show[ed] compliance with a statutory sentencing mandate" (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991).

Again, "we presume that the trial court knew the law and followed it." (*Ramirez*, *supra*, 10 Cal.5th at p. 1042; see *Knowles*, *supra*, 105 Cal.App.5th at pp. 768–769 [rejecting claim the sentencing court failed to consider mitigating evidence because it did not mention all the evidence]; Cal. Rules of Court, rule 4.409 ["Relevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise"].) Nothing in the record overcomes the presumption that the trial court understood and applied section 1170(b)(6) in making its sentencing choices. (See *Ramirez*, at p. 1043 [the trial court's comments at sentencing did "not persuade [the

California Supreme Court] that the presumption has been overcome that trial judges understand and follow established law"].)[13]

E.    *The Court's Decision to Impose Upper Terms*

As we have seen, the trial court was permitted to select upper terms for counts 11 and 12 pursuant to section 1172.75(d)(4) because Bravo's original sentence included upper terms for those counts. At the resentencing hearing, the prosecution argued upper terms were warranted because of factors related to the crime—"the victim was particularly vulnerable in that she was age 15"[14] (Cal. Rules of Court, rule 4.421(a)(3)), the crimes involved inducing a minor to commit crimes (rule 4.421(a)(5)), and Bravo was convicted of other crimes for which consecutive sentences could have been imposed but were not (rule 4.421(a)(7))—and factors related to Bravo—he had prior convictions of increasing seriousness (rule 4.421(b)(2)), and he was on probation when at least some of the crimes were committed (rule 4.421(b)(4)). The trial court found that upper terms were "appropriate . . . given the factors articulated by the People."

---

[13] To the extent Bravo suggests the trial court abused its discretion in declining to impose the lower term, we see no abuse of discretion. (See *Knowles*, *supra*, 105 Cal.App.5th at p. 770 ["Weighing [mitigating and aggravating] circumstances is the province of the trial court. We may not reverse a sentencing decision ' "merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for that of the trial judge' " ' "].) To the extent he suggests the court was not permitted to impose upper terms, he is mistaken. Section 1172.75(d)(4) explicitly authorizes a resentencing court to impose an upper term where, as in this case, the defendant was sentenced to an upper term originally.

[14] Separately, the victim's mother stated that the victim was very vulnerable.

17

Bravo argues the court improperly relied on facts that were elements of the offenses to impose upper terms. (See Cal. Rules of Court, rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term"].) He claims the age of the victim was an element of many of the offenses (so the fact that the victim was 15 years old should not be used to find her particularly vulnerable), and he asserts inducing a minor to commit a crime "is the core element of" the offense of soliciting a minor to use/sell a controlled substance (count 12).

Initially, we are not convinced that the aggravating factor of the vulnerability of the victim based on her age was an element of the offenses at issue (counts 11 and 12). An element of many of his sex offenses is that the victim is under 16, but young age is not an element of count 11 (rape by use of drugs), and, while count 12 involves soliciting a minor to commit a crime, a 15-year-old victim may be more vulnerable than an older minor of 16 or 17.

The Attorney General takes the position that, regardless of consideration of aggravating factors, the trial court was free to impose upper terms under section 1172.75(d)(4) because Bravo's original sentence was for upper terms. We will assume the trial court was required to find aggravating factors to impose upper terms, but we find no reversible error.

The prosecution proffered—and the trial court relied on—*many* factors in aggravation that Bravo does not challenge, and the court determined upper terms were appropriate in this case.[15] On this record, we conclude any

---

[15] As we have noted, the statute is clear that in resentencing the facts in aggravation need not be "stipulated to by the defendant" or "found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75(d)(4) [requiring a stipulation or a finding beyond a reasonable doubt of aggravating circumstances "[u]nless the court originally imposed the upper term"].)

18

error in the trial court citing an aggravating factor that may have been an element of one of the offenses was harmless. The record clearly indicates the trial court would have reached the same conclusion even if it had not considered as an aggravating factor the circumstance that Bravo induced a minor to commit a crime.

F.    *The Court's Failure to State Reasons for Imposing Consecutive Terms*

Bravo recognizes that, after imposing a principal term for count 12, the trial court had authority under section 667.6, subdivision (c), to impose a full, separate, and consecutive term for count 11 (rape by use of drugs). But he complains that the court erred in failing to state reasons for its decision to impose a consecutive term.

Because defense counsel did not raise this issue at the sentencing hearing, this claim is forfeited. "[A] defendant cannot complain for the first time on appeal about the court's failure to state reasons for a sentencing choice." (*People v. Scott* (1994) 9 Cal.4th 331, 352.)

Bravo tries to avoid forfeiture by arguing defense counsel was ineffective in failing to object. This argument is unavailing because Bravo has not shown prejudice. (See *People v. Mai* (2013) 57 Cal.4th 986, 1009 [to demonstrate ineffective assistance of counsel, a defendant must show (1) "counsel's performance was deficient" and (2) "resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different"].) Here, the trial court clearly determined that a 20-year sentence was appropriate for Bravo's 12 crimes involving sex, pandering, and drug offenses committed over the course of four months against a 15-year-old victim. Bravo fails to show that it is reasonably probable the outcome would have been different if defense counsel

19

had objected and requested a statement of reasons for the court's decision to impose a full, consecutive term for count 11.

## DISPOSITION

The judgment is affirmed.

_____
Miller, J.

WE CONCUR:


_____
Stewart, P.J.


_____
Desautels, J.




A168580, *People v. Bravo*


21

Trial Court:  Superior Court of Contra Costa County


Trial Judge:  Hon. Julia Campins


Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant


Rob Bonta, Attorney General; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Assistant Attorney General; Eric D. Share, Shirin Oloumi, Deputy Attorneys General, for Plaintiff and Respondent


A168580, *People v. Bravo*